T.C. Memo. 2018-187

UNITED STATES TAX COURT

PETER GIANULIS AND GABRIELA REXACH SUBIRA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20502-15.                    Filed November 5, 2018.

Peter Gianulis, pro se.

<u>Andrew Michael Tiktin</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined income tax deficiencies against

petitioners for 2010 and 2011 of $30,076 and $79,244, respectively, an addition to

tax under section 6651(a)(1) for 2011 of $10,372 for failure to file a timely return,

[*2] and accuracy-related penalties under section 6662(a) for 2010 and 2011 of $6,015 and $15,849, respectively.[1]

The issues for decision are:

(1) whether Peter Gianulis (petitioner) may deduct a long-term capital loss of $500,000 for the taxable year 2010 related to his investment in Antares Real Estate III, LLC (Antares). We conclude that he may deduct $300,000;[2]

(2) whether petitioner has a sufficient basis in Carrelton Asset Management, Inc. (Carrelton), a subchapter S corporation, to deduct certain passthrough losses for the taxable years 2010 and 2011. We conclude that he does not;

(3) whether petitioner is entitled to net operating loss carryforward deductions for 2010 and 2011 of $244,113 and $719,177, respectively. We conclude that he is not; and

(4) whether petitioner is subject to an addition to tax under section 6651(a)(1) for his failure to file a timely 2011 return, and whether he is liable for

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and as in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[2]Petitioner Peter Gianulis appeared at trial and stipulated respondent's proposed facts and exhibits. Petitioner Gabriela Rexach Subira has been absent throughout these proceedings. The Court therefore will dismiss this case, as it relates to Ms. Subira, for lack of prosecution.

[*3] accuracy-related penalties under section 6662(a) for the taxable years 2010

and 2011.  We conclude that he is.[3]

FINDINGS OF FACT

Petitioner was a resident of Florida at the time he filed his petition.  On

March 7, 2018, respondent filed an amended opening brief setting forth his request

for findings of fact.  Petitioner's brief was due May 4, 2018; however, he failed to

submit a brief or objections to respondent's request.  Therefore, we adopt and

incorporate respondent's requested findings of fact with the exception of

paragraphs 33, 34, and 35.

Petitioner is a highly educated and sophisticated individual.  He obtained a

bachelor's degree in quantitative economics from the University of California, San

Diego, and a master's in business administration from Cornell University.  He was

employed by Salomon Brothers from 1996 to 2004 where he worked in marketing

and management and as an analyst for a large hedge fund.  In 2005 he left

---

[3]In addition several computational issues depend on petitioner's adjusted gross income for the years 2010 and 2011.  These issues include whether petitioner is entitled to student loan interest deductions, making work pay tax credits, and additional child tax credits, and whether petitioner's miscellaneous itemized deductions should be decreased in light of an increase to adjusted gross income.  Because they are computational, we do not address these issues in this opinion.

[*4] Salomon Brothers and started his own hedge fund management company, Carrelton.

I.    $500,000 Long-Term Capital Loss

In 2010 petitioner claimed a $500,000 long-term capital loss deduction on Schedule D, Capital Gains and Losses, of his income tax return arising from a 2007 investment in Antares.  Antares, a now defunct real estate project in Texas, was the subject of a foreclosure action in 2010 and subsequently filed for bankruptcy.

Petitioner produced records from January 2007 showing he wired a total of $300,000 from his Smith Barney account to Amegy Bank National Association (Amegy Bank).  He also produced two letters dated November 18 and December 6, 2017, from Javier Reyes, a former employee of Antares.  In his November 18 letter Mr. Reyes confirms "to the best of * * * [his] knowledge that Mr. and Mrs. Gianulis (and/or a company controlled by Mr. Gianulis i.e. Carrelton Asset Management, LLC) invested, in total, $500,000 through a series of wire transfers." These funds were used to purchase an equity stake in Antares.  The funds were sent in a series of wire transfers from Smith Barney and Northern Trust to Amegy Bank, an intermediary for Antares' accounts at Texas Community Bank.  All records of the investment held by Antares were destroyed in 2011.

[*5] II.     Passthrough Losses and Deductions

Petitioner was the 90% shareholder of Carrelton, which managed Carrelton Horizon Fund, a hedge fund with 79 investors that invested primarily in natural resource, mining, and energy companies.  In the notice of deficiency respondent disallowed petitioner's claimed passthrough losses and deductions from Carrelton as follows:

|  | 2010 Tax Year | | |
|  | Amount claimed | Amount allowed | Amount disallowed |
| --- | --- | --- | --- |
| Ordinary business loss | $650,477 | $502,059 | $148,418 |
| Short-term capital loss | 160,231 | 86,817 | 73,414 |
| Investment expense | 44,258 | 24,056 | 20,202 |

|  | 2011 Tax Year | | |
|  | Amount claimed | Amount allowed | Amount disallowed |
| --- | --- | --- | --- |
| Ordinary business loss | $7,226 | --- | $7,226 |
| Investment interest expense | 9,202 | --- | 9,202 |

**[*6]**    Petitioner purports to have paid during 2010 $77,297 in expenses on behalf

of Carrelton.[4]  He argues now that those expenses should increase his basis in

Carrelton.  Those expenses were charged to an American Express credit card

shared by petitioner and his wife and used for both personal and business

expenses.  Petitioner presented copies of American Express credit card statements

and a spreadsheet of alleged business expenses.  Petitioner's spreadsheet was

made in 2013 or 2014 after the Internal Revenue Service examination had begun.

No other contemporaneous records showing the business purpose of these

expenses were presented.  Petitioner does not know whether any of the expenses

he allegedly paid on behalf of Carrelton were recorded as "Loans from

shareholders" on Schedule L, Balance Sheets per Books, of Carrelton's 2010 tax

return.  He likewise does not know whether he ever received reimbursement from

Carrelton for any expenses he incurred on its behalf.

III.    Net Operating Loss Carryforward Deductions

Petitioner claimed net operating loss carryforward deductions for 2010 and

2011 of $244,113 and $719,177, respectively.  In his notice of deficiency

---

[4]Respondent presented a summary exhibit of his calculations, organized by expense category, at trial.  The exhibit calculates total expenses of $77,299. Because we hold that petitioner has not substantiated any expenses paid on behalf of Carrelton in 2010, we will rely on petitioner's total.

**[*7]** respondent disallowed these deductions after determining that petitioner had not established his right to them under the Code.

IV.    Accuracy-Related Penalties and Addition to Tax

Petitioner secured an extension of time to file his 2011 return until October 15, 2012.  However, he did not file his 2011 return until December 28, 2012.  Similarly, he secured an extension of time to file his 2012 return until October 15, 2013.  However, respondent prepared a substitute for return for petitioner on December 23, 2013.  Petitioner did not file his actual 2012 return until March 11, 2014.  Petitioner has a pattern of filing late returns or no return at all.  His 2007 return was filed late, and no return was filed for 2008, 2013, 2014, 2015, or 2016.

In November 2013 respondent secured written supervisory approval to assert accuracy-related penalties against petitioner.  Those penalties were subsequently determined in respondent's notice of deficiency dated May 12, 2015.  Petitioner reported no tax liability on his 2010 or 2011 returns.  In his notice of deficiency respondent determined deficiencies for 2010 and 2011 of $30,076 and $79,244, respectively.

## OPINION

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he is entitled to claimed deductions.  Rule 142(a); INDOPCO,

[*8] <u>Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  A taxpayer must maintain records sufficient to allow the Commissioner to determine his correct tax liability. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving the determinations are in error.  <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

I.     $500,000 Long-Term Capital Loss

Respondent's notice of deficiency disallowed a $500,000 long-term capital loss deduction claimed on petitioner's 2010 return.  That deduction stems from an investment in Antares in 2007.  The company has since filed for bankruptcy, and petitioner contends his investment was lost.

Generally, taxpayers are entitled to deduct a loss sustained during the taxable year and not compensated for by insurance or otherwise.  <u>See</u> sec. 165(a). Petitioner has the burden of proof, and the Code requires him to maintain books and records sufficient to establish the reported loss.  Sec. 6001.  The Court is satisfied that petitioner's proof substantiates a $300,000 investment in Antares.

Petitioner produced the January 2007 account statement from his Smith Barney account which shows $300,000 wired through Amegy Bank.  He also produced two letters from Javier Reyes, a former employee of Antares,

[*9] corroborating his investment. Mr. Reyes confirms that petitioner purchased an equity stake in Antares and that Amegy Bank served as the intermediate bank for Antares accounts at Texas Community Bank.

Petitioner's bank statement, coupled with his testimony and two letters from Mr. Reyes, is enough to establish an investment. Section 165(a) allows for a loss deduction with the amount of the loss determined under the adjusted basis provisions of section 1011. Sec. 165(b). Generally, the basis of property under section 1011 is the amount paid. See sec. 1.1012-1(a), Income Tax Regs. Petitioner alleges a total investment of $500,000. However, he produced evidence to substantiate a $300,000 investment. Therefore, we find that petitioner was entitled to a $300,000 long-term capital loss deduction for 2010.

Respondent urges us to consider that Carrelton, not petitioner, may have invested in Antares. Respondent acknowledges petitioner's personal funds were wired to Antares but claims it is logical that Carrelton may have booked the transferred amounts as a loan from petitioner. We cannot accept this speculative claim. There is nothing in the record indicating that Carrelton recorded loans from petitioner in 2007, the year the transfer to Antares was made. Respondent points to an increase in recorded "Loans from shareholders" on Schedule L of Carrelton's 2009 tax return but offers no explanation as to why the loan would have been

**[\*10]** recorded two years after the money was wired to Antares. On this record we are satisfied that petitioner, not Carrelton, invested $300,000 into Antares.

II.     Passthrough Losses and Deductions

Respondent further disallowed $258,462 of petitioner's claimed passthrough losses and deductions from Carrelton. Respondent argues that petitioner failed to demonstrate sufficient basis in Carrelton to claim these deductions. We agree.

Petitioner may not deduct losses from Carrelton in excess of his adjusted basis in Carrelton stock plus his adjusted basis in any debt of Carrelton's to him. See sec. 1366(d). Petitioner has failed to persuasively dispute respondent's assertion that he lacks a basis in Carrelton. His only argument is that his basis in Carrelton increased when he paid $77,297 of expenses on behalf of Carrelton. However, we cannot accept this claim.

Petitioner has the burden to show that he actually incurred expenses on behalf of Carrelton and received no reimbursement from Carrelton. See Rule 142(a); Thomson v. Commissioner, T.C. Memo. 1983-279, aff'd without published opinion, 731 F.2d 889 (11th Cir. 1984). While petitioner presented bank statements showing the expenses were actually incurred, that is not enough. Petitioner needs to show not only that the expenses were in fact incurred but also

**[*11]** that they were incurred on behalf of Carrelton.  See Thomson v. Commissioner, T.C. Memo. 1983-279.  Petitioner's testimony, supported only by bank statements and a spreadsheet he created from memory years after the alleged expenditures, is not satisfying proof to this effect.  See id.

Even if we were to assume petitioner established that the expenses were incurred on behalf of Carrelton, which we do not, petitioner presented nothing to show that he was not reimbursed for the expenses.  In fact petitioner admits that he does not know whether he received reimbursement.  On this record we have no choice but to uphold respondent's determination in his notice of deficiency.

III.  Net Operating Loss Carryforward Deductions

Respondent's notice of deficiency disallowed petitioner's net operating loss carryforward deductions for 2010 and 2011 of $244,113 and $719,177, respectively.  Petitioner has not made any arguments or presented any proof to show he is entitled to the deductions.  Respondent's notice of deficiency simply contends petitioner failed to establish he "sustained any such loss deductible under the provisions of the Internal Revenue Code."  Without anything from petitioner to refute this claim, we must presume it is correct.  See Welch v. Helvering, 290 U.S. at 115.  Therefore, petitioner is not entitled to these deductions.

[*12] IV.    Accuracy-Related Penalties and Addition to Tax

Finally, respondent determined accuracy-related penalties and an addition to tax against petitioner.  While a taxpayer generally has the burden of proving that the determinations set forth in the notice of deficiency are incorrect, the Commissioner carries the burden of production with respect to the taxpayer's liability for penalties and additions to tax.  Sec. 7491(c).  Once this burden is met, however, the burden shifts to the taxpayer to present evidence sufficient to convince the Court that the Commissioner's determination is incorrect.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001) (noting that section 7491(c) gives the Commissioner only a burden of production; the burden of proof remains with the taxpayer).

In this case respondent has met his burden of production as it relates to the addition to tax determined under section 6651(a) for 2011 and the accuracy-related penalties determined under section 6662(a) for 2010 and 2011.  Section 6651(a) allows for an addition to tax in the case of a late-filed return.  Petitioner's 2011 return was due under extension on October 15, 2012, but he did not file until December 28, 2012.  Petitioner may still escape liability if he can show that his delinquent filing was due to reasonable cause and did not stem from willful neglect.  Sec. 6651(a)(1).  However, he made no argument and has offered no

[*13] proof to this effect. In fact he routinely files late returns if he files a return at all. For these reasons the addition to tax for 2011 determined under section 6651(a) is sustained.

Respondent has likewise met his burden of production in regard to the accuracy-related penalties determined for 2010 and 2011 under section 6662(a). Section 6662(a) and (b)(1) and (2) imposes a penalty when there is an underpayment of tax attributable to negligence or a substantial understatement of income tax, as relevant in this case. A substantial understatement of income tax exceeds the greater of 10% of the tax required to be shown or $5,000. Sec. 6662(d)(1). Respondent has shown that petitioner's underpayments for 2010 and 2011 are due to substantial understatements of income tax. Petitioner presented no evidence showing the underpayments were attributable to reasonable cause or good faith. See sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs. In addition petitioner made no attempt to show that respondent's determination was otherwise incorrect. See Higbee v. Commissioner, 116 T.C. at 447.

We also note that compliance with section 6751(b) is a part of respondent's burden of production in establishing liability for penalties under section 6662(a). Graev v. Commissioner, 149 T.C. __, __ (slip op. at 14) (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016). Section 6751(b)

**[\*14]** requires respondent to obtain written supervisory approval before the initial determination of any accuracy-related penalties.  Because we find that respondent did so here, the accuracy-related penalties for 2010 and 2011 determined under section 6662(a) are sustained.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

An appropriate order will be

issued, and decision will be entered

under Rule 155.
